UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DENNIS D. PITMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:14CV00085 ERW |
| | ) |
| AMERISTEP CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Ameristep Corporation, Tahsin Industrial Corporation USA and Wal-Mart Corporation's Motion for Summary Judgment [ECF No. 35].

**I.   BACKGROUND**

Plaintiff Dennis Pitman ("Plaintiff") initiated this lawsuit on July 31, 2014, in the Circuit Court of Montgomery County, Missouri. Defendants Ameristep Corporation and Wal-Mart Stores, Incorporated[1] removed the matter to this Court on August 29, 2014. Wal-Mart Stores, Incorporated was dismissed on July 22, 2016. Plaintiff's First Amended Petition asserts two claims against Defendants Ameristep Corporation and Tahsin Industrial Corporation USA ("Defendants") including negligence and strict liability. Defendants filed the current Motion for Summary Judgment asserting Plaintiff fails to establish a design, manufacturing, or failure to warn defect and the sole cause of the accident was Plaintiff's misuse of the product. The uncontroverted facts are as follows.

---

[1] The correct name for this defendant is Wal-Mart Stores, Incorporated. Plaintiff mistakenly listed this defendant as Wal-Mart Corporation in the complaint.

Plaintiff purchased a ratchet strap from Wal-Mart. He claims it was purchased in 2010, but he does not have proof of purchase, the packing, or the written instructions. Plaintiff estimates he has purchased hundreds of ratchet straps over the years. On this occasion, Plaintiff purchased two six-foot, one-inch camouflage ratchet straps manufactured in 2008. The strap he purchased is used to replace ratchet straps on tree stands. The strap is used by wrapping it around the back of the tree and securing the hook ends to the tree stand. The user then tightens the strap through the ratchet mechanism.

The ratchet straps were purchased as a dual package, and both straps had identical webbing material. Over 1.8 million of these straps have been sold since 2006, and they are all comprised of the same polypropylene material. The tree stand industry has utilized this material for straps to secure tree stands for over two decades. Defendants began manufacturing the strap at issue in this matter in 2006. Approximately 1.8 million of these straps have been manufactured using the same webbing supplier, webbing components, webbing polypropylene material, manufacturing facility, manufacturing process, and design.

The factory engineering and design team, with the webbing supplier, selected the polypropylene material. The factory had two decades of experience using this material in the outdoor tree stand application. The polypropylene material, including the entire ratchet assembly, was tested both in-house and by a third-party laboratory. New straps are able to withstand in excess of 1,000 pounds of load before structurally failing. Defendants sent ratchet assemblies to a third-party facility to conduct independent testing of the straps, particularly the polypropylene webbing material.[2] This facility confirmed the straps were more than strong enough for a loaded capacity of 300 pounds for use on tree stands. The webbing supplier provided supplier

---

[2] It is unclear to the Court whether the ratchet assemblies were sent to a third-party facility during the design and manufacturing process or as part of this litigation.

certifications the material was of sufficient strength. Numerous testing laboratories tested the strap material and the results demonstrate the straps can withstand between 1,200 to 1,300 pounds. The parties agree the material used in the straps will deteriorate when exposed to the elements such as moisture, temperature fluctuations, freezing, sunlight, and tree growth.

The warnings and instructions provided with the strap state:

> You MUST READ all Warnings and Restrictions before use.
> Follow your manufacturer's tree stand installation and set-up instructions for proper installation of ratchet strap.
> DO NOT leave Ratchet Strap out in sunlight or other weather when not in use.
> 1. ALWAYS read all warnings and instructions before each use of product. Failure to read all warnings and instructions before each use of product may result in serious injury or death.
> 2. Remove all contents from clamshell. Inspect for any damaged or missing pieces. DO NOT assemble to ladder stand if any parts are missing or damaged. Using the ratchet with missing or damaged parts may result in serious injury or death. Missing or damaged parts may be obtained from the address and phone number listed below.
> 5. DO NOT leave the ratchet outside all year round. It must be stored inside when not in use.
> 10. This Ratchet Strap is for replacement of ratchet straps included with your tree stand ONLY.
> 13. DO NOT leave ratchet strap out in sunlight or other weather when not in use.[3]

The NBEF[4] tree stand safety video has been used with tree stands since 1999, and has been included with new packages of tree stands Plaintiff purchased. The video shows the correct and proper way to hang a tree stand using screw-in steps or climbing sticks, as well as the correct way to use a full-body safety harness and climbing belt. This video illustrates the way to be "double attached," which means the hunter's harness is connected to both the climbing belt under the tree stand and the tree strap above the stand before the hunter enters the stand.

Plaintiff has used a number of different products with the ratchet straps including a hang-

---

[3] Plaintiff contests the statements contained were within the written instructions but he provides no evidence to contest it. Therefore, this fact will not be considered disputed by the Court.
[4] There is no explanation in either Defendants' or Plaintiff's Statement of Material Facts as to the full name of this entity.

on tree stand, tree steps, and a climbing stick. Plaintiff also owned a full-body safety harness and an electric lineman's safety harness. He used these when hunting and when installing and taking down his tree stands. Many of these products he purchased over the years were new and came with written warnings, instructions, and videos. Plaintiff would have read all the warnings and instructions packaged with his hunting products and always tried to follow the instructions and warnings.

As for the strap at issue in this matter, Plaintiff knew there was a label on the strap providing warnings but did not read this label. Plaintiff does not claim the strap did not come with written warnings and instructions, but he does not remember seeing them in the package. Plaintiff admitted he reviewed numerous warnings and instructions over the years and had never been confused about how to use a safety harness, lineman's climbing belt, or any other tree stand product. Plaintiff testified he had reviewed other ratchet strap warnings and instructions prior to the accident.

Plaintiff claims he installed this ratchet strap for the first time in September 2010 to secure one of his hang-on tree stands. Plaintiff states the strap remained in the same tree and was removed in early to mid-January 2011. Then, Plaintiff claims the straps were stored indoors and installed again on the day of his fall. Additionally, Plaintiff claims the exact same usage for the other strap that was included in the package. The strap at issue was retrieved from the scene a few days after the fall and given to Plaintiff's attorney. The other strap was given to Plaintiff's attorney in October 2012. The current discoloration and condition of the two straps are the same as they were at the time of Plaintiff's fall.

On the day of the accident, Plaintiff intended to hang three to four tree stands. Plaintiff inspected the strap before he took it down in January 2011, and before installing it on the day of

4

the fall. According to Plaintiff, he installed the climbing stick and tree steps, climbed up, pulled up the stand, placed it, and secured it by ratcheting down the strap. After no more than three seconds, when Plaintiff tried to throw his safety belt around the tree and rehook it, the ratchet strap on the tree stand "popped." Plaintiff was wearing his lineman's belt but was not connected to the tree at the time the strap popped. He was not wearing his safety harness. Plaintiff knew he was at risk of serious injury or death when in an elevated position while not properly secured to the tree.

Plaintiff has been working as a hunting guide since the late 1990s. Plaintiff knew he needed to store his equipment inside when not in use, to wear a full-body safety harness, and to inspect the equipment prior to use. He testified he always took down all his hang-on tree stands at the end of every hunting season and would store his tree stands and ratchet straps indoors. He would throw away any ratchet straps needing replacement. Plaintiff is aware the webbing material in the strap will deteriorate and break down when exposed to the elements and would not last forever. This is why Plaintiff would cut off the ratchet straps securing his tree stand and replace them every two years. Plaintiff also knew it was important to inspect the product, including the ratchet straps before each use. Plaintiff was aware he needed to wear a full-body safety harness and if he did not, he risked falling and getting injured. Plaintiff's expert admitted all hunting safety organizations instruct users of the importance of wearing a safety harness.

## II.     STANDARD

A court shall grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts "might affect the outcome of the suit under the governing law," and

5

a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts that demonstrate a genuine dispute on that issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in

the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

**III.  DISCUSSION**

In their Motion for Summary Judgment, Defendants assert Plaintiff's claims fail for four reasons. First, there is no evidence of a design or manufacturing defect. Second, there is no evidence of a manufacturing defect. Third, adequate warnings and instructions were provided with the product. Finally, there is no proximate causation because Plaintiff misused the straps and he was not wearing a full body safety harness at the time of the fall. The Court will address each argument as follows.

  *A.  Design Defect*

Defendants argue there is no design defect because Plaintiff's own expert agrees the selected material was appropriate for the application. Plaintiff's argues the strap is defective because it is prone to weathering and deterioration when exposed to the elements and this is not specified in the warnings. Plaintiff's expert did not recommend an alternative material for the straps nor did he state how long the straps should have lasted.

In Missouri, a products liability claim means,

> . . . a claim or portion of a claim in which the plaintiff seeks relief in the form of damages on a theory that the defendant is strictly liable for such damages because: (1) The defendant, wherever situated in the chain of commerce, transferred a product in the course of his business; and (2) The product was used

7

in a manner reasonably anticipated; and (3) Either or both of the following: (a) The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold; or (b) The product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damaged as a direct result of the product being sold without an adequate warning.

Mo. Rev. Stat. § 537.760. Missouri has adopted the rule of strict liability of tort as stated in Restatement (Second) of Torts § 402A. *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo. 1969). A product liability claim can arise from a design defect, manufacturing defect, or a failure to warn of danger. *Magnuson by Mabe v. Kelsey-Hayes Co.*, 844 S.W.2d 448, 455 (Mo. Ct. App. 1992). Negligence is not an element of a product liability case. *Welkener v. Kirkwood Drug Store, Co.*, 734 S.W.2d 233, 241 (Mo. Ct. App. 1987).

A product's design is defective when it is shown by a preponderance of the evidence the design makes the product unreasonably dangerous. *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 377 (Mo. 1986). The focus is on the reasonably anticipated use of the product rather than the harm the product may cause. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 607-08 (Mo. 1977). Reasonably anticipated use includes misuse and abnormal use which is objectively foreseeable. *Nesselrode*, 707 S.W.2d at 381. Existence of a defect may be inferred from circumstantial evidence and common experience; expert testimony is not required. *Williams v. Deere & Co.*, 598 S.W.2d 609, 612 (Mo. 1980). A manufacturer is not liable because a product wears out over time. *Glass v. Allis-Chalmers Corp.*, 789 F.2d 612, 614 (8th Cir. 1986).

If the jury is persuaded a defect exists at the time of purchase, a plaintiff is not obliged to pinpoint the cause. *Rauscher v. Gen. Motors Corp.*, 905 S.W.2d 158, 161 (Mo. Ct. App. 1995).

> [O]nce the plaintiff, in a case of strict liability, produces evidence that neither he nor any third person has made alterations to the product, which would create a defect that could be the proximate cause of the damages incurred, he has made a submissible case as to the issue of the existence of a defect at the time of sale or delivery of the product."

*Weatherford v. H.K. Porter, Inc.*, 560 S.W.2d 31, 35 (Mo. Ct. App. 1977) (quoting *Winters v. Sears, Roebuck, and Co.*, 554 S.W.2d 565, 573 (Mo. Ct. App. 1977)). Defendants' experts assert the strap is three years old and has been left out in the elements causing significant deterioration. Plaintiff testified in his deposition he used the strap for one hunting season and properly stored it when it was not in use. This is a genuine issue of material fact precluding the granting of summary judgment on the issue of defective product design. This matter must be submitted to the jury.

    B.    *Manufacturing Defect*

Defendants assert Plaintiff has failed to show there was an error in the manufacturing process or that the strap was not manufactured as designed. A manufacturing defect occurs when something has gone wrong in the manufacturing process. *Richcreek v. Gen. Motors Corp.*, 908 S.W.2d 772, 776 (Mo. Ct. App. 1995). A manufacturing defect has occurred when the consumer purchases or uses the product and it is not in its intended condition. *Id*. It is evaluated against the producer's own standards and compared to like products. *Id*.

Plaintiff has presented evidence to create a genuine issue of material fact as to whether there was a manufacturing defect. Plaintiff's expert proffered opinions stating the strap at issue failed to support the weight Defendants listed it is capable of enduring and he compared it to new straps. Defendants argue there is no manufacturing defect because the reason the strap broke is because Plaintiff left it exposed to the elements for a significant period of time, contrary to the warnings and instructions provided with the strap. This is a sharply contested fact. Defendants experts state the strap is approximately three years old. However, Plaintiff states he purchased the strap in 2010, used it for one hunting season, and properly stored it in the off season. This is a matter for the jury to decide, not the Court. This may or may not be enough evidence to convince

a jury, but it is enough to survive summary judgment. The Court will deny Defendants' Motion for Summary Judgment on this point.

  C. *Failure to Warn*

Defendants argue the manufacturer provided adequate warnings and instructions on how to properly use the replacement ratchet straps with the tree stands and Defendants are entitled to presume a user would read and heed those warnings. Plaintiff asserts the warning fails to define "use," does not express any danger or risk of injury with the failure to properly store the strap, and does not include instructions on how to properly inspect the straps or the dangerous consequences if a user fails to do so.

A failure to warn claim can concern a missing warning or a warning that is deficient. *Nesselrode*, 707 S.W.2d at 382. A plaintiff must prove: (1) the defendant sold the product in the course of its business; (2) the product was unreasonably dangerous at the time of sale when put to its reasonably anticipated use without knowledge of its characteristics; (3) the defendant did not include an adequate warning; (4) the product was used in a manner reasonably anticipated; and (5) the plaintiff was damaged as a result of the lack of adequate warning. *Jaurequi v. John Deere Co.*, 971 F. Supp. 416, 427 (E.D. Mo. 1997) *aff'd* 173 F.3d 1076 (8th Cir. 1999). The last element requires both the product without the warning caused the plaintiff's injuries and the warning would have altered the behavior of those involved in the accident. *Arnold v. Ingersoll-Rand Co.*, 834 S.W.2d 192, 194 (Mo. 1992). The key issue in a failure to warn case is whether the information included with the product "effectively communicates to the consumer or user the dangers that inhere in the product during normal use and the dangerous consequences that can or will result from misuse or abnormal misuse of the product." *Nesselrode*, 707 S.W.2d at 382. A manufacturer may be held liable for a failure to warn even if the design of the product is not

defective. *Jaurequi*, 971 F. Supp. at 427.

In Missouri, courts presume a warning will be heeded by the consumer. *Arnold*, 834 S.W.2d at 194. Before applying the presumption, a court must ask if adequate information is available without the warning. *Id*. Once the presumption is applied, to negate it, a defendant must show the plaintiff knew not just of general dangers with the product, but of the specific danger at issue in the case. *Cole v. Goodyear Tire & Rubber Co.*, 967 S.W.2d 176, 185 (Mo. Ct. App. 1998).

Plaintiff has created a genuine issue of material fact as to whether the warnings and instructions included in the ratchet strap were adequate. Plaintiff's expert opinions state the warning is inadequate and fails to include important information. The warnings can be interpreted in several different ways and there are no instructions on how to inspect the ratchet strap. It is up to a jury to decide whether those warnings should be included. There is an issue regarding whether Plaintiff read the warnings, if he understood the warnings, and if he would have changed his behavior if the warnings were different. These are all questions for the jury to decide. *See Bradley v. Ameristep Inc.*, 880 F.3d 205, 212-213 (6th Cir. 2005).[5] The Court will not grant Defendants' Motion for Summary Judgment on this point.

D.   *Proximate Causation*

Finally, Defendants assert Plaintiff is unable to establish a defect in the strap is the proximate cause of Plaintiff's injuries. Defendants claim Plaintiff's injuries were caused by Plaintiff leaving the strap on a tree for a significant amount of time when it was not in use,

---

[5] In *Bradley v. Ameristep*, the plaintiff sued Ameristep, Incorporated over the same ratchet straps at issue in this matter. The Sixth Circuit held the warnings included with the ratchet strap contain an ambiguous term of "use" and did not include guidance on how quickly the straps deteriorate, what deterioration looks like, how long the straps can be exposed, or what to look for in an inspection of the strap.

Plaintiff failing to adequately inspect the strap before using it, and Plaintiff failing to properly use a safety harness while climbing the tree.

Proximate cause is whether the defect in the product is the "cause or act of which the injury was the natural and probable consequence." *Hargis v. Lankford*, 372 S.W.3d 82, 87 (Mo. Ct. App. 2012) (citing *United Mo. Bank, N.A. v. City of Grandview*, 105 S.W.3d 890, 896 (Mo. Ct. App. 2003)). The test is whether after the fact, the injury appears to be the reasonable and probable consequence of the defect in the product. *Id*. The determination of probable cause is usually a question left for the jury, unless there is an intervening cause. *Id*. The proximate cause of an injury need only be a "substantial factor or efficient causal agent." *Nesselrode*, 707 S.W.2d at 381.

It is a sharply contested issue whether the strap was left on the tree for a significant period of time when not in use. Defendants' experts assert the strap was left on the tree for approximately three years and had significantly degraded from weather exposure. Plaintiff testified in his deposition he had used the strap for one hunting season and properly stored it in containers when it was not in use. Additionally, Plaintiff's cousin claims he purchased straps on the same date, and the same problems occurred even though he also properly used and stored his strap. These are factual issues which must be determined by a jury.

Defendants' arguments regarding Plaintiff's failure to inspect the strap and Plaintiff's failure to properly use a safety harness go to Plaintiff's comparative fault. Missouri has adopted comparative fault and abolished pure contributory fault. Mo. Rev. Stat. § 537.765(1); *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 97 (Mo. Ct. App. 2006). Defendant must plead and prove Plaintiff's fault as an affirmative defense. Mo. Rev. Stat. § 537.765(2). Any fault attributable to Plaintiff reduces the amount of compensatory damages but does not bar

recovery. *Id*. Fault is limited to the following:

> (1) The failure to use the product as reasonably anticipated by the manufacturer; (2) Use of the product for a purpose not intended by the manufacturer; (3) Use of the product with knowledge of a danger involved in such use with reasonable appreciation of the consequences and the voluntary and unreasonable exposure to said danger; (4) Unreasonable failure to appreciate the danger involved in use of the product or the consequences thereof and the unreasonable exposure to said danger; (5) The failure to undertake the precautions a reasonable careful user of the product would take to protect himself against dangers which he would reasonable appreciated under the same or similar circumstances; or (6) The failure to mitigate damages.

*Id*. Defendants' arguments about Plaintiff's behavior fall squarely into the definition of fault as listed in the statute. The Court has already determined Plaintiff has presented evidence to create a genuine issue of material fact as to whether Defendants' product was defective. It is up to the jury to determine whether any fault attributable to Plaintiff reduces the amount of compensatory damages. Additionally, when a defense is raised about Plaintiff's knowledge of the risks, the question of the adequacy of the knowledge is for the jury. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 762 (Mo. 2011). The Court will not grant Defendants' Motion for Summary Judgment on this point.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Ameristep Corporation, Tahsin Industrial Corporation USA and Wal-Mart Corporation's Motion for Summary Judgment [ECF No. 35] is **DENIED**.

Dated this 26th Day of September, 2016.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE